# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WINDOWS PLUS, INCORPORATED, an Illinois corporation, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>DOOR CONTROL SERVICES, INC., a Texas corporation,<br><br>    Defendant. | Case No. 13-cv-7072<br><br>Hon. Robert W. Gettleman<br><br>Magistrate Judge Arlander Keys |

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com

*Attorneys for Plaintiff and the Settlement Class*

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................1

II.   PROCEDURAL HISTORY.........................................................................................2

III.  CLASS COUNSEL'S UNOPPOSED FEE REQUEST ...............................................3

    A.  Door Control Has Agreed to Pay Class Counsel's Requested Fees, The Amount of Which Was The Result of Compromise ................................................................3

    B.  Class Counsel Performed Substantial Work on Behalf of the Class .......................5

    C.  The Requested Fees are Equally Appropriate Under the Lodestar Method ............6

IV.  THE REQUESTED INCENTIVE AWARD TO THE REPRESENTATIVE PLAINTIFF IS PROPER. .........................................................................................9

V.   CONCLUSION...........................................................................................................10

## **TABLE OF AUTHORITIES**

**UNITED STATES SUPREME COURT CASES**

*Fox v. Vice*,
131 S. Ct. 2205 (2011) ..................................................................................................................8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..................................................................................................................3, 7

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) .......................................................................................................6

*Connolly v. Nat'l Sch. Bus. Serv., Inc.*,
177 F.3d 593 (7th Cir.1999) ........................................................................................................8

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ..................................................................................................8, 9

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2004) .......................................................................................................7

*Gastineau v. Wright*,
592 F.3d 747 (7th Cir. 2010) ...................................................................................................7, 8

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) .......................................................................................................8

*Pearson v. NBTY*,
– F.3d –, 2014 WL 666128 (7th Cir. Nov. 19, 2014) ..................................................................7

*Redman v. RadioShack Corp.*,
2014 WL 4654477 (7th Cir. Sept. 19, 2014) ...........................................................................4, 7

*Skelton v. Gen. Motors Corp.*,
860 F.2d 250 (7th Cir. 1988) .......................................................................................................8

*Staton v. Boeing*,
327 F.3d 938 (9th Cir. 2003) .......................................................................................................4

**UNITED STATES DISTRICT COURT CASES**

*In re Brand Name Prescription Drugs Antitrust Litig.*,
2000 WL 204112 (N.D. Ill. Feb. 9, 2000) ...................................................................................9

*In re Cenco, Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ..................................................................................8, 9

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
1992 WL 226321 (C.D. Cal. June 10, 1992) .......................................................................4

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
106 F. Supp. 2d 721 (D.N.J. 2000) .....................................................................................5

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ...........................................................................................9

*In re Southwest Airlines Drink Voucher Litigation*,
No. 1:11-cv-08176 (Docket No. 141) .................................................................................9

*Manners v. Am. Gen. Life Ins. Co.*,
1999 WL 33581944 (M.D. Tenn 1999) ..............................................................................4

*Rossi v. Proctor & Gamble Co.*,
2013 WL 5523098 (D.N.J. Oct. 3, 2013) ............................................................................4

*Snell v. Allianz Life Ins. Co. of North Am.*,
2000 WL 1336640 (D. Minn. Sept. 8, 2000) ......................................................................4

*Spicer v. Chi. Bd. Options Exch., Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) .....................................................................................9

Pursuant to Fed. R. Civ. P. 23, Plaintiff Windows Plus Incorporated ("Plaintiff"), by its counsel, respectfully submits the following Motion for Attorneys' Fees, Costs, and Incentive Award.

## I. INTRODUCTION

Class Counsel seeks the Court's approval of an award for attorneys' fees and costs in the amount of $117,500, and an incentive award of $3,500 to the named Plaintiff – both of which Defendant Door Control Services, Inc. ("Door Control") has agreed to pay. The award sought is reasonable and appropriate, as Class Counsel litigated this matter without any compensation from the investigation stages all the way through class-wide resolution on behalf of the Class, and obtained a settlement that provides substantial relief to the Class members. The Parties were able to reach agreement on the issue of attorneys' fees only after weeks of spirited exchanges on this issue.

Counsel's base lodestar time to date, including costs, is $143,351.04. (*See* Declaration of Joseph J. Siprut ("Siprut Decl."), attached hereto as Exhibit 1, ¶¶19-20.) Counsel has nonetheless agreed to a negotiated resolution on fees in the amount of $117,500. Thus, not only does Counsel not ask the Court to utilize a multiplier enhancement to approve the negotiated fees, Counsel would be receiving a *negative multiplier.*

In sum, and as demonstrated below, Class Counsel's requested fee award:

- Is the result of negotiation and compromise with Door Control and is unopposed;

- Does not affect or reduce the Class benefits under the Settlement in any way; and

- Falls well within the range of attorneys' fees and expenses awarded by courts within the Seventh Circuit using the lodestar/multiplier methodology.

## II.   PROCEDURAL HISTORY

Plaintiff filed its class action complaint ("Complaint") against Door Control on October 7, 2013. (Docket No. 1.) The claims were asserted by Plaintiff on behalf of itself and a proposed class of all individuals or entities in the United States who received one or more facsimiles from Door Control or who own the fax machines on which the facsimiles were received. (*Id.*) The case is currently pending before this Court.

On November 22, 2013, Door Control filed its motion to change venue, arguing that the more appropriate venue is the Eastern District of Texas. (Docket No. 12.) Door Control made three principal arguments. First, Door Control contended that Plaintiff's choice for venue should be given little weight as it seeks relief on behalf of a nationwide class. (*Id.* at 5.) Second, Door Control argued that the Eastern District of Texas was a more convenient venue given that the location of its employees and access to its proof is located in that district. (*Id.* at 6.) Third, Door Control asserted that actions proceed to trial more quickly in the Eastern District of Texas. (*Id.* at 8.)

That same day, Door Control also filed its Answer raising several affirmative defenses, including, but not limited to, Plaintiff's failure to mitigate damages, that Door Control's actions were taken in good faith, and the equitable doctrines of estoppel and waiver. (Docket No. 15.)

On January 6, 2013, Plaintiff issued discovery relating to, among other things, the number of faxes sent, the entities involved in the transmission, the relationship, if any, between the recipients and Door Control, and class certification. (Docket No. 33 at Exs. A, B.)

At the status hearing on January 7, 2014, this Court set a briefing schedule regarding Door Control's change of venue motion. (Docket No. 24.) In order to gather necessary information to rebut Door Control's motion, Plaintiff filed its Motion for Leave to Conduct Limited Venue Discovery and Stay Briefing on Door Control's Motion to Transfer Venue

January 15, 2014. (Docket No. 26.) Plaintiff requested sixty (60) days to conduct limited discovery and stay the briefing on Door Control's motion until discovery was completed. (*Id.* at 3.) On January 21, 2014, this Court granted Plaintiff's motion to conduct limited discovery. (Docket No. 28.)

As the Parties exchanged information and discovery, they also began early settlement discussions, and continued the process of exchanging information. (*See* Siprut Decl. ¶8.) This process continued for several months, and at the status hearings on April 16 and May 13, 2014, the Parties reported that settlement discussions were proving fruitful and requested more time to work out key terms of an agreement. (*See id.* ¶9.)

Settlement negotiations continued, and finally, after nearly eight months of settlement discussions, the Parties agreed upon all key terms of the proposed settlement. (*See id.* at ¶10.) Still, however, the Parties then spent several weeks drafting and editing the final written agreement. (*See id.*) On August 1, 2014, the Parties executed the Settlement Agreement. (Docket No. 33 at Ex. 1.)

The same day, Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement. (*Id.*) The Court granted Plaintiff's Motion and entered a Preliminary Approval Order on August 6, 2014. (Docket No. 38.)

### III.  CLASS COUNSEL'S UNOPPOSED FEE REQUEST

#### A. Door Control Has Agreed to Pay Class Counsel's Requested Fees, The Amount of Which Was The Result of Compromise.

Class Counsel's fee request was the result of a negotiated resolution with Door Control. The Parties' negotiations over this issue were spirited, but both sides worked hard to reach a result that was fair, managed risk for both sides, and would eliminate any burdens otherwise imposed on this Court by having to decide fees on a contested basis. *Hensley v. Eckerhart*, 461

U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee.").

Given all this, the Parties' negotiated resolution must be accorded deference, even if it is not necessarily the exact number a court would have derived in a vacuum. *See Redman v. RadioShack Corp.*, 2014 WL 4654477, at *4 (7th Cir. Sept. 19, 2014) (stating that a judge may assume a passive role where there is genuine adverseness between the parties); *Staton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003) (where "defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class . . . the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated"; the issue is whether the fee is facially fair and reasonable); *Rossi v. Proctor & Gamble Co.*, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013) ("[C]ourts routinely approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount is independent of the benefit obtained for the class."); *Snell v. Allianz Life Ins. Co. of North Am.*, 2000 WL 1336640, at *19 (D. Minn. Sept. 8, 2000) ("Our acceptance of the fee request is facilitated by the fact that the fee amount was independently negotiated by the settling parties, and comes from a source that does not impact upon the total settlement fund that is available to the class."); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *28 (M.D. Tenn. Aug. 11, 1999) (negotiated fee in class action entitled to "great weight" where attorneys' fees negotiations were conducted at arm's length, after agreement on all settlement terms); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (where there is arm's length negotiation with neutral mediator and no evidence of self-dealing or conflict of interest,

"the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.").

Indeed, as another district court observed in *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721, 722 n.1 (D.N.J. 2000):

> Here, Class Counsel presumably sought more than [the agreed upon fee] in their fee negotiations with Prudential, and presumably agreed to [the fee] as a compromise, in order to achieve an agreement that Class Counsel hoped, under the circumstances, would be respected. If such agreements are likely to be subject to further reduction by the Court notwithstanding the absence of any collusion or opportunity for collusion, and notwithstanding the absence of any impact on the class recovery, then future plaintiffs' counsel will have little incentive to make such agreements.

Here, as in *In re Prudential*, while any fee award on a contested basis may have been higher (or lower) than the agreed amount, Class Counsel respectfully submits that the agreed amount is a fair compromise. More importantly, as detailed below, the request is further supported under the applicable standards for approval.

### B. Class Counsel Performed Substantial Work on Behalf of the Class.

Class Counsel expended tremendous effort in bringing about this settlement on behalf of Class members. Door Control's attorneys mounted a skilled defense, from the pleadings stage through settlement. The hours Class Counsel expended in battling Door Control, which total 326.5 (Siprut Decl. ¶19), include the following:

- **Pre-Complaint Factual Investigation**. Class Counsel began conducting a factual and legal investigation in 2013, starting with an analysis of the facsimile advertisement issued on Door Control's behalf.

- **Legal Investigation**. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research had been completed, Class Counsel began: (1) formulating the TCPA claims; (2)

drafting, preparing, and filing the Complaint; and (3) engaging in correspondence with clients regarding the complaint and the case in general.

- **Motion Practice and Discovery**. Early on in the case, Door Control moved to transfer venue to the Eastern District of Texas. Based on Class Counsel's research, prosecuting a class action under the TCPA may face hurdles less likely to be overcome in the Eastern District of Texas. Moreover, Class Counsel believes that Plaintiff's choice of forum is entitled to deference. Accordingly, Class Counsel vehemently opposed Door Control's motion. While drafting Plaintiff's response, Class Counsel sought leave to conduct limited discovery on venue to challenge assertions made by Door Control in its motion. For example, Plaintiff found that some of the relevant witnesses may be present in California or North Carolina. Plaintiff asserts that the presence of material witnesses outside Door Control's proposed forum weighs in favor of retaining venue in this District. Prior to seeking to issue limited venue discovery, Plaintiff issued general discovery to Door Control to establish the merits of Plaintiff's case. Class Counsel also significantly researched class certification issues (and potential Door Control defenses to class certification), given that class certification would have been the "make or break" point for a case of this nature. For example, Class Counsel researched the theory under which a class could be certified, even if Door Control had obtained prior express permission or had an established business relationship with some or all of the Settlement Class members.

- **Interactions With Clients and the Members of the Class**. During the course of the past thirteen (13) months, Class Counsel has received various inquiries from Settlement Class Members, which has required Class Counsel to take the time to communicate with each individual, collect data, and keep consumers apprised of any progress in the case.

- **Settlement**. Class Counsel conducted substantial and protracted settlement negotiations with Door Control that spanned approximately eight (8) months. Class Counsel researched and drafted memoranda regarding potential settlement structures, analyzed settlements in similar cases, reviewed materials obtained through informal discovery, and regularly engaged in telephonic conferences and email exchanges. After approximately eight (8) months of negotiations, the parties were able to agree on the substantive terms that would provide immediate and direct benefits to the Class.

C. **The Requested Fees Are Appropriate Under the Lodestar Method.**

A lodestar calculation supports the request, and underscores the reasonableness of the Parties' compromise on this issue. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) (finding that court did not abuse discretion

using the lodestar method to award $1.15 million in attorneys' fees where the actual pay-out to the class was approximately $400,000 or 7% of the potential benefit made available).[1]

To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to calculate a base lodestar amount by "multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (citing *Hensley*, 461 U.S. at 433-37 (1983)). Here, the time summary included in the Siprut Declaration accurately reflects the extensive work Class Counsel performed – and expects to perform to see the case through to completion – in this novel and complex litigation. To date, three attorneys at Class Counsel's firm have spent 326.5 hours collectively in prosecuting this action for a total lodestar amount of $142,621.00 (Siprut Decl. ¶19.) As detailed in the Declaration of Joseph Siprut, the hourly rates utilized by Siprut PC's attorneys and legal staff (1) have been previously approved by courts throughout the country and this district; (2) are the same hourly rates charged by Siprut PC to outside clients; and (3) are demonstrably *lower* than the median hourly rate in the legal market based on the hourly rates charged in other cases by attorneys with similar experience, skill and reputation. (*Id*. ¶¶21-27.)

The time summary provided in the Siprut Declaration is sufficient to form the basis of the fee request. The Supreme Court has explicitly held that

---

[1] *Eubank v. Pella Corp*., 753 F.3d 718 (7th Cir. 2004), *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), and *Pearson v. NBTY*, – F.3d –, 2014 WL 666128 (7th Cir. Nov. 19, 2014) are not to the contrary. *E.g.*, *RadioShack*, 768 F.3d at 635 ("[H]ours can't be given controlling weight in determining what share of the class action settlement pot should go to class counsel. **The judge could start with hours** but couldn't rightly stop there.") (emphasis added). But *RadioShack* did *not* hold that the amount actually claimed by the Class is the sole determinant, or that fees can *never* exceed the amount claimed by the Class. The class members in *Americana Art* claimed less than $400,000 out of the available $6 million, and the district court chose to award class counsel roughly $1.1 million in fees under the lodestar method (rather than the greater amount sought by class counsel) precisely *because* of the meager amount claimed – a decision that this Court affirmed on appeal. *See* 743 F.3d at 247 ("[The district court] did consider the paucity of the class recovery as compared to the requested fee award when deciding whether to apply the lodestar method, as opposed to the percentage method, in the first place. But that is exactly what we have suggested a district *should* do." (emphasis in original).).

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.

*Fox v. Vice,* 131 S. Ct. 2205, 2216 (2011) (internal quotations omitted). Class Counsel's declaration and the time records summarized therein are thus more than sufficient for establishing lodestar figures.

The base lodestar is typically adjusted using a multiplier to take into account various factors in the litigation that affect the reasonableness of the requested fees. *See, e.g.*, *Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988). These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748. When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier). Multipliers can range from 2 to 4 or even higher. *See In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (citing *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir.1999)).

In this case, as detailed above, Class Counsel's base lodestar is $142,621.00. Door Control has already agreed to pay $117,500 in fees. Thus, the Court only needs to award the

agreed-upon fees, which is *18% less* than Class Counsel's base lodestar.[2] Because courts routinely use positive multipliers in awarding fees, awarding $117,500 – with a *negative* multiplier – is certainly within the range of reasonableness considering the risk of non-recovery and the excellent result achieved. *See Harman*, 945 F.2d at 975 (noting "[a risk] multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four . . . have been approved"); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. at 327 (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar); *In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 204112, (N.D. Ill. Feb. 9, 2000) (awarding $91 million above lodestar and noting that "[an] award of more than two times the lodestar calculation is believed to be fair and just in these circumstances").

Accordingly, the requested fee award of $117,500 is reasonable and, in all events, unopposed by Door Control. The fee award will not reduce the Class benefits in any way; it is simply a payment from Door Control to Class Counsel.

## IV. THE REQUESTED INCENTIVE AWARD TO THE REPRESENTATIVE PLAINTIFF IS PROPER.

Finally, Plaintiff requests that the named plaintiff and class representative receive an incentive award of $3,500, which Door Control does not oppose (and which, like attorneys' fees, was the result of a negotiated compromise). The rationale for awarding incentive payments to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005). Incentive awards are appropriate "to encourage or induce an individual to participate" in a class action law suit. *Id.*

---

[2] That figure was calculated by dividing $117,500 by $142,621.00.

Moreover, and similar to the fee request, comparisons to incentive awards in other similar class action settlements further underscore that this amount is reasonable and fair. *See, e.g.*, *In re Southwest Airlines Drink Voucher Litigation*, No. 1:11-cv-08176 (Docket No. 141) (each of two class representatives received $15,000 incentive awards); *Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($30,000 awarded from settlement fund of $10 million).

In this case, the class representative plaintiff has contributed substantially to this litigation and has invested considerable time, at its own expense, to do so. Plaintiff aided our initial investigation of the claims, and worked to provide a variety of documentation (initially at our request, and then additionally as the Parties exchanged information) to support the asserted claims on behalf of the Class. Plaintiff also spent several hours with us on the phone discussing the case and its progress, and particularly the scope of the settlement eventually achieved. (Siprut Decl., ¶3.)

## V. CONCLUSION

For the reasons set forth above, Class Counsel respectfully suggests that the proposed (and agreed-upon) award of attorneys' fees and costs in the amount of $117,500 – and the class representative award of $3,500 – is fair, appropriate, and reasonable, and requests the Court enter an Order approving these amounts.

Dated: December 30, 2014                    Respectfully submitted,

                                                        WINDOWS PLUS INCORPORATED, individually and on behalf of all others similarly situated

                                                        By:   */s/ Joseph J. Siprut*
                                                             One of the Attorneys for Plaintiff
                                                             And the Settlement Class

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**S**IPRUT **PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com

-12-

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Award** was filed this 30th day of December, 2014, via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

                                                          */s/ Joseph J. Siprut*

4839-2214-9409, v. 1